**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**BRENT EDWARD CLARK,**

      **Plaintiff,**

**v.**                                                          **CIVIL ACTION NO.: 3:20-CV-223
(GROH)**

**UNITED STATES OF AMERICA,**

      **Defendant.**

**REPORT AND RECOMMENDATION**

**I. INTRODUCTION**

On December 10, 2020, the *pro se* Plaintiff, who was previously a federal prisoner incarcerated at FCI Morgantown, in Morgantown, West Virginia, initiated this case by filing the Court-approved form. ECF No. 1.[1] Plaintiff claims he is entitled to damages pursuant to the Federal Tort Claims Act for acts which allegedly occurred while Plaintiff was incarcerated at FCI Morgantown in the Northern District of West Virginia. Plaintiff paid the initial partial filing fee on December 10, 2020. ECF No. 2.

The matter is now before the undersigned for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the complaint be denied and dismissed without prejudice.

---

[1] All CM/ECF numbers cited herein are from the instant case, 3:20-CV-223, unless otherwise noted.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Claims in the Complaint

The complaint alleges that Plaintiff was injured while in federal custody on December 17, 2018, when Plaintiff tripped over his cellmate's mattress which his cellmate placed on the floor. ECF No. 1 at 6. Plaintiff asserts that the "defendants negligently allowed the plaintiff's cellmate to house his mattress on the prison cell floor which cause the plaintiff to fall and injure himself. Plaintiff had asked on many occa[sions]. . . that the floored mattress be removed." Id. Plaintiff claims that the actions of four federal employees of the Bureau of Prisons form the basis for his claim: (1) Lieutenant Montgomery; (2) Lieutenant Meyers; (3) Lieutenant Guy; and (4) Special Housing Unit Officer Jones. Id. Specifically, Plaintiff claims that Jones "admits the mattress was floored at the time of the fall accident [on December 17, 2018]. Id. Further, Plaintiff contends that "Lieutenants rounded each shift and saw that the mattress was floored." Id.

According to Plaintiff, as a result of these actions he suffered the following injuries: (1) irreversible brain damage; (2) cognitive memory dysfunction; (3) seizure disorder; (4) post-traumatic stress disorder; and (5) shoulder disfunction. Further, Plaintiff claims that because of his injuries he "can no longer work as a physician or college professor" and that he has suffered a loss of "cosortium". Id. at 9.

Plaintiff seeks an unspecified amount of "compensatory damages for future loss of wages, pain and suffering, future medical expenses, and future long-term care. Id.

### B. Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

Defendant filed a motion to dismiss or for summary judgment, and a memorandum

and exhibits in support thereof, on May 19, 2021. ECF Nos. 26, 27, 27-1, 27-2.[2] Defendant argues that Plaintiff's complaint should be dismissed because: (1) Defendant is not liable for any failure to protect Plaintiff because the discretionary function exception to the FTCA shields Defendant from liability; and (2) Plaintiff cannot show the United States breached its duty of care and was the proximate cause for Plaintiff's alleged injuries. ECF No. 27.

### C. Plaintiff's response to Motion to Dismiss or for Summary Judgment

On June 9, 2021, Plaintiff filed a "unified response to Defendant's motion to dismiss and reply to Defendant's response to Plaintiff's complaint". ECF No. 29. Therein, Plaintiff argues that: (1) Defendant wrongfully asserts Jones' conduct is shielded by the discretionary function [ECF No. 29 at 3 – 11]; (2) Defendant misrepresented the evidence presented by Plaintiff [Id. at 12 – 14]; (3) Defendant mistakenly asserts that there is no statute, BOP rule or policy which guides BOP staff on how to address inmates who place their mattresses on the floor, and that BOP Program Statement 5217.02 governs such situations [Id. at 14 – 15]; (4) Plaintiff did not concede that BOP employee Jones' actions, were reasonable under the circumstances, but rather claimed that his actions were negligent [Id. at 15 – 17]; (5) two days before he was injured, Plaintiff gave notice of the dangerous conditions caused by his cellmate's mattress on the floor to BOP staff [Id. at 17 – 18]; (6) Plaintiff made multiple requests for BOP to address his cellmate's practice of placing his mattress on the floor, without responsive BOP action [Id. at 18 – 19]; (7) Defendant's negligent violations of the ADA and Rehabilitation Act make the Defendant a

---

[2] Additional institutional and medical records were filed separately under seal. ECF Nos. 26, 29, 30, 47.

proper party to claim brought pursuant to the Act [Id. at 19]; (8) Jones proximately caused Plaintiff's injuries when Jones failed on December 17, 2018,[3] to remove or "evacuate the mattress from the floor" [Id. at 20 – 22]; and (9) Defendant misrepresented whether Plaintiff suffered injuries as a result of his fall, and that Plaintiff incurred a concussion, post-concussion syndrome, cognitive memory dysfunction, an seizure disorder, which injuries led Plaintiff to be assessed by the Social Security Administration[4] as totally disabled [Id. at 22 – 25].

Plaintiff further asserted that he conclusively proved the negligence by agents of the Defendant because he was determined to be disabled by the Social Security Administration. Id. at 25 – 26. Finally, Plaintiff argues that he is entitled to summary judgment because the identified Government agents at FCI Morgantown "failed to provide the Plaintiff with suitable quarters, safekeeping, care and protection" pursuant to 18 U.S.C. § 4042 when they failed to remove the mattress Plaintiff complained about.

### D. Defendant's Reply to Plaintiff's Response

On June 23, 2021, Defendant filed a reply which argued that the motion to dismiss or for summary judgment should be granted for the following reasons: (1) the actions of BOP officials were clearly within the discretionary function exception [ECF No. 27 at 7 – 16]; and (2) Plaintiff cannot support a claim of negligence because the United States did not breach its duty of care to Plaintiff, and because no agent of the United States was the

---

[3] Plaintiff also asserts that fell again on December 19, 2018, "while attempting to ambulate in the prison cell . . . [and] tripped again over the cellmate's floored mattress, sustaining injuries to his head that nearly led to his death." ECF No. 29 at 20. Plaintiff's complaint signed December 3, 2020, does not allege the Plaintiff fell a second time on December 19, or that he was nearly fatally injured. ECF No. 1 at 6. Rather, the complaint states Plaintiff fell on December 17, 2018, and was evaluated on December 18, 2018 for injuries. Id.

[4] Plaintiff refers to "Social Security Disability", rather than the Social Security Administration.

4

proximate cause of his injuries [Id. at 16 – 21].

### III. LEGAL STANDARD

#### A. Review of Complaints

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and the Court's Local Rules of Prisoner Litigation Procedure, this Court is authorized to review such complaint and submit findings and recommendations to the District Court. This Court is charged with screening Plaintiff's case to determine "any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss, . . . to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action."

#### B. Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, a complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d)[5] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory,

---

[5] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

> but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit. . .

490 U.S. at 327.

### C. Actions Under the Federal Tort Claims Act (FTCA)

The FTCA is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of the negligent acts of agents of the United States. The United States cannot be sued in a tort action unless Congress has waived the government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. §§ 1346(b), 1402(b), 2401(b) and 2671-2680.

In 2021, the Supreme Court issued a decision which summarized the historical precedent which led to the enactment of the FTCA:

> The FTCA streamlined litigation for parties injured by federal employees acting within the scope of their employment. Before 1946, a plaintiff could sue a federal employee directly for damages, but sovereign immunity barred suits against the United States, even if a similarly situated private employer would be liable under principles of vicarious liability. Despite that immunity, the Government often would provide counsel to defendant employees or indemnify them. In addition, Congress passed private bills that awarded compensation to persons injured by Government employees. But by the 1940s, Congress was considering hundreds of such private bills each year. Critics worried about the speed and fairness with which Congress disposed of these claims.
>
> In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees acting within the scope of

6

> their employment. The Act in effect ended the private bill system by transferring most tort claims to the federal courts. Plaintiffs were (and are) required to bring claims under the FTCA in federal district court. Federal courts have jurisdiction over these claims if they are actionable under § 1346(b). A claim is actionable if it alleges the six elements of § 1346(b), which are that the claim be:
>
> [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.[6]

Brownback v. King, 141 S. Ct. 740, 746 (2021) (cleaned up and internal citations omitted).

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150 (1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

However, the FTCA does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). "The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the

---

[6] 28 U.S.C. § 1346(b)(1) provides, "[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

place where the act occurred." Id.

Even where the government has waived sovereign immunity, the FTCA only authorizes lawsuits against the United States itself. 28 U.S.C. § 1346(b). Therefore, the United States, not any government employee or agency is the only proper defendant in an FTCA lawsuit. See 28U.S.C. 2679(a); Webb v. Hamidullah, 281 F. App'x 159, 161 n. 4 (4th Cir. 2008) (per curiam) (unpublished) (United States is the only proper defendant in FTCA claim); Holmes v. Eddy, 341 F.2d 477, 480 (4th Cir. 1965) (per curiam) (federal agency cannot be sued pursuant to the FTCA); Allfgeir v. U.S., 909 F.2d 869 (6th Cir. 1990) ("The FTCA clearly provides that the United States is the only proper defendant in a suit alleging negligence by a federal employee").

A constitutional civil rights claim is not cognizable in an FTCA lawsuit. FDIC v. Myer, 510 U.S. 471, 477-79 (noting that a constitutional tort claim is not cognizable in an FTCA lawsuit because the United States has not waived its sovereign immunity with respect to constitutional tort allegations); Blanchard v. United States, No. 2:14cv58, 2015 WL 4107311, at 13 (N.D.W. Va. July 7, 2015), aff'd 622 F. App'x 287 (4th Cir. 2015) (per curiam) (unpublished) (finding that a civil rights claim alleging a violation of the Eighth Amendment prohibition against cruel and unusual punishment is not actionable against the United States in an FTCA lawsuit because a constitutional tort claim is not cognizable under the FTCA.

### D. Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the

pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff's complaint was filed *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a

legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

### E. Motions for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact." 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587.

"Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968). See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## IV.    ANALYSIS

As recognized by the Supreme Court in Brownback v. King, 141 S. Ct. at 746, an FTCA claim is actionable if it alleges the six elements of 28 U.S.C. § 1346(b), which are that the claim be: (1) against the United States; (2) for money damages; (3) for injury or loss of property, or personal injury or death; (4) caused by the negligent or wrongful act or omission of any employee of the Government; (5) while acting within the scope of his office or employment; (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Plaintiff asserts that he was injured when he fell after tripping over a mattress which his cellmate placed on the floor of the shared cell. ECF No. 1 at 6. Plaintiff identified agents of the Bureau of Prisons as the wrongdoers who proximately caused him physical harm through their inaction, or failure to either require Plaintiff's cellmate to remove his mattress from the floor, or to remove the mattress themselves.

Defendant argues that the discretionary function exception excludes the United States from liability for such a claim. The Fourth Circuit has previously recognized that when the Government argues that the discretionary function exception applies, it is essentially an assertion that the court lacks subject matter jurisdiction. <u>Tyree v. United States</u>, 814 F. App'x 762, 766 (4th Cir. 2020). The Court agrees with Defendant's argument that the discretionary function exception applies here, rendering Plaintiff claim unactionable.

The discretionary function exception is codified in subsection (a) of the exceptions statute:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680.

In <u>Blanco Ayala v. United States</u>, 982 F.3d 209, 214–15 (4th Cir. 2020), the Fourth Circuit summarized the analysis which must be performed to determine whether the discretionary function exception bars an FTCA claim:

> To determine whether the exception applies, we must first ascertain whether the acts in question "are discretionary in nature," such that they "involv[e] an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). The exception does "not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954.

13

> Second, we must determine whether the challenged "governmental actions and decisions" were "based on considerations of public policy." *Id.* at 537, 108 S.Ct. 1954. When statutes, regulations, or agency guidelines grant discretion to a government agent, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324, 111 S.Ct. 1267. In conducting this analysis, we do not "inquire whether policy considerations *were actually* contemplated in making a decision." *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 208 (4th Cir. 2002). Rather, we consider only whether "the nature of the challenged decision in an objective, or general sense, ... is one which we would expect inherently to be grounded in considerations of policy." *Baum*, 986 F.2d at 721.

As to the first prong articulated in Blanco Ayala, the Supreme Court has stated that "conduct cannot be discretionary unless it involves an element of judgment or choice. Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988). Further, "if the employee's conduct cannot appropriately be the product of judgment or choice then there is no discretion in the conduct for the discretionary function exception to protect." Id. "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" United States v. Gaubert, 499 U.S. 315, 322 (1991) (*quoting* Berkovitz).

Thus, to meet the first prong of the Blanco Ayala analysis, the Plaintiff must establish that the Government's agents whom he accuses of negligence were not performing a discretionary function at the time he alleges he was injured. To meet that standard, Plaintiff must establish that the Government was not exempt from the FTCA pursuant to 28 U.S.C. § 2680(a). However, it is clear that Plaintiff is unable to demonstrate either fact.

14

BOP employees were clearly engaged in a discretionary function in addressing the mattress placement in Plaintiff's cell. The BOP is charged with the discretionary duty of care to maintain order within its facilities pursuant to 18 U.S.C. § 4042. That statute provides in pertinent part, that, "[t]he Bureau of Prisons under the direction of the Attorney General, shall . . . provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." However, as the Fourth Circuit has held, "decisions relating to the accommodation of inmates, such as cell assignments, are the type of day-to-day judgments that rest firmly in the discretion of prison officials." Veney v. Wyche, 293 F.3d 726, 733 (4th Cir. 2002). Accordingly, decisions made by BOP officials related to the accommodation of inmates, including the placement of their mattresses, rest firmly within the discretionary function of those officials.

To the extent that Plaintiff argues that BOP employees were mandated to take specific action related to his complaint about the mattress, he is unable to cite to authority which supports that claim. Plaintiff cites to 18 U.S.C. § 4042, BOP Program Statement

5217.02[7], BOP Program Statement 1600.13[8], and BOP Program Statement 1600.11[9] in support of his claim. ECF No. 29 at 5 – 8, 14 – 16. None of those program statements give a clear directive related to Plaintiff's complaint regarding the placement of an inmate's mattress on the cell floor.

Defendant argues that the only rule, regulation, or program statement that addresses placement of inmates' mattresses is in relation to Special Management Units, BOP Program Statement 5270.11, which provides that:

> (d) Bedding. You will receive a mattress, blankets, a pillow, and linens for sleeping. You will receive necessary opportunities to exchange linens. If the institution issues the combination mattress with a pillow incorporated, a separate pillow will not be issued. Staff may remove an inmate's mattress during non-sleeping daytime hours as a "loss of

---

[7] Pursuant to this program statement, entitled "Special Management Units", "Inmates receive a mattress, blankets, a pillow, and linens for sleeping. Inmates have necessary opportunities to exchange linens." https://www.bop.gov/policy/progstat/5217_02.pdf.

[8] This program statement is entitled "National Fire Protection Policy" and addresses mattresses in these provisions:

    i. Mattress Fire Tests. Mattresses must pass the following fire tests:
    ■ 16 CFR 1632: Standard for the Flammability of Mattresses and Mattress Pads.
    ■ 16 CFR 1633: Standard for the Flammability (Open Flame) of Mattress Sets.
    ■ ASTM E1590: Standard Test Method for Fire Testing of Mattresses.
    j. Surplus/Used Mattresses. The acquisition of surplus or used mattresses is not permitted.
    k. Mattress Modification. Mattresses may not be repaired, modified, or recovered. Damaged mattresses must be removed from service. P1600.13 6/1/2017 29
    l. Furnishings. Furniture in inmate housing areas must be constructed of non-combustible, fire-resistant, or solid wood materials. The ESCA must review purchase requests for: furniture, mattresses, waste receptacles, and curtains (including shower curtains) to ensure the flammability standards referenced in the NFC and BOP policy are being met.

https://www.bop.gov/policy/progstat/1600.13.pdf.

[9] This program statement is entitled, "National Occupational Safety and Health Policy". The word "mattress" does not appear in this program statement. One section of the program statement provides:

    a. Stairs and Walkways. Floors and stairways must be maintained in a clean, dry manner and free of nails, splinters, holes, loose boards, corrosion, snow, or ice. Aisles and passageways, including in housing units, must be kept clear and in good repairs, with no obstruction across or in aisles that could create a hazard.

https://www.bop.gov/policy/progstat/1600_011.pdf at 25.

> privilege" sanction imposed by the Unit Discipline Committee (UDC)/DHO. Removal of an inmate's mattress is otherwise prohibited, absent life or safety concerns as specifically documented and authorized by the Warden, or his/her designee.

https://www.bop.gov/policy/progstat/5270.11.pdf.

There does not appear to be a government law or BOP rule, regulation, or policy which requires BOP employees to remove a mattress from the floor of a cell. Rather, there is a program statement which ***prohibits*** employees from removing mattresses from cells, except during non-sleeping daytime hours as a "loss of privilege" sanction imposed by the Unit Discipline Committee (UDC)/DHO. BOP Program Statement 5270.11. Further, neither party cites to any government law or BOP rule, regulation, or policy that expressly requires the transfer an inmate because of the placement of his mattress on the floor. Accordingly, it is clear that any action taken to respond to a complaint about a cellmate's placement of a mattress within a cell was a discretionary matter for BOP employees to address. Where such a decision is based upon the discretion and judgment of the BOP's staff, that decision is subject to the discretionary function exception to liability under the Federal Tort Claims Act.

As to the second prong of the Blanco Ayala test, Plaintiff is also incapable of demonstrating that he is entitled to relief. The FTCA's discretionary function exception only applies to discretionary conduct that is based on social, economic, or political goals. Where an established government policy, such as the BOP policies related to the provision of suitable quarters for inmates, and for the safekeeping of those quarters, allows a Government agent to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion. Gaubert, 499 US at 324.

17

Therefore, a complaint cannot survive a motion to dismiss unless it alleges facts that would support a finding that "the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Id. at 324 – 25. Congress in enacting 18 U.S.C. § 4042 granted BOP employees discretion with respect to how to best ensure the safekeeping, care and subsistence for all inmates in their suitable quarters. Such responsibility is based on the considerations of public policy related to inmate safety and welfare. Accordingly, the decision of BOP staff related to either movement of an inmate's mattress, or transfer or Plaintiff to a different cell, falls within the discretionary function exception to the FTCA.

Accordingly, to the extent that the Plaintiff alleges that BOP employees' failure on December 17, 2018, to move Plaintiff's cellmate's mattress off the floor of their shared cell, the discretionary function is applicable, and the United States is immune from liability for the Plaintiff's complaint.[10]

Because Defendant is immune from suit under the Federal Tort Claims Act when the act or omission complained of is covered by the discretionary function exception, Plaintiff's complaint fails. Even if Plaintiff demonstrated that he meets all six prongs to assert a cause of action under the FTCA and Brownback his claim still fails. Regardless of whether the alleged injuries he suffered on December 17, 2018, were caused by the

---

[10] Finally, the undersigned recognizes that in Plaintiff's response to the Defendant's motion to dismiss or for summary judgment, that Plaintiff alleges for the first time that he was also injured in a fall which occurred on December 19, 2018. ECF No. 29 at 11. Plaintiff cites to three exhibits to support his claim of injury on December 19, 2018. Id., citing to "exhibits 2a, 4 and 1". The Court further notes that those exhibit numbers match, in part, Electronic Case Filing numbers assigned by the Clerk. Exhibit 1 matches ECF No. 10-1. Exhibit 2a matches ECF No. 10-2. Exhibit 4 does not have a counterpart in the Clerk's file, however, an exhibit labeled "Exhibit 7" was the fourth consecutive exhibit provided by Plaintiff and was assigned ECF No. 10-4. A review of those three exhibits does not reveal that any of the documents refer to any injury that incurred on December 19, 2018. Further, the first two exhibits predate December 19, 2018, and the third is dated March 6, 2019.

negligent or wrongful act or omission of any employee of the Government, the discretionary function exception still applies, and his claims are not actionable under the FTCA.

For all of these reasons, the undersigned finds that the District Court lacks subject matter jurisdiction to consider this matter. When subject-matter jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 118 S.Ct. 1003, 1012–16 (1998); Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999).

## V. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's complaint as to the United States of America be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

It is further **RECOMMENDED** that Defendant's motion to dismiss, or alternatively, for summary judgment [ECF No. 26] be **GRANTED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.**  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: December 8, 2021

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE